Our next case this morning is 5-25-0727, 111 Salvage, LLC v. Metro East Sanitary District, et al. Arguing for the appellant is Attorney Connor. Arguing for the appellee is Attorney Funk. Are you both ready to proceed? We are. Thank you. If you would, for the recording purposes, please state your name at the beginning of the case, and you may proceed when you're ready. Good morning. My name is Timothy Ryan Connor, arguing on behalf of the appellant, 111 Salvage, LLC. Good morning. May it please the Court, Counsel. Coming before you today is the appeal from Madison County Circuit Court of a Section 2-619 dismissal in full of a complaint in tort. That complaint alleged negligence on behalf of the Metro East Sanitary District. That negligence was the ignition of a fire that would have been on MESD's property immediately adjacent to 111 Salvage and the subsequent damage that occurred to 111. 111 brought suit within the Illinois Local Government Tort Immunity Act Statute of Limitations one year and sent notice to the board as prescribed by 70 ILCS 2905-1-5, but did not do so within six months of the date of the fire. This is the basis for Judge Smith's grant of a motion to dismiss filed by MESD in response to the complaint. MESD successfully argued below that the statute requires that the letter, the notice provision contemplated by Section 1-5, means six months from the date of the fire. We argued below for the application of the discovery rule to this specific set of circumstances, not to the Local Government Tort Immunity Act, because suit was filed within the one year, but application to Section 1-2905-1-5, which provides that that letter must be sent to the board within that six month period of time. The question for you is whether that is possible, because Judge Smith decided that as a matter of law, that is impossible, that six months means the date of occurrence only, and because it means the date of occurrence only, any complaint on its face must be dismissed if that letter was not sent within six months. We totally disagree, because for some policy reasons I'll get into later, what happened here is the creation now of a class of claims that are impossible to address, that, as argued below by my opponents, even if MESD knows of its conduct and the plaintiff doesn't know of the injury or the wrong, six months is six months. The mere passage of time has transformed a tort into something that is not a tort. It is now without redress, and 111 Salvage has no cause of action. And the fire was on the adjacent property, correct? On 111 Salvage's property, that's correct. Right, but the fire originated on an adjacent property. That was the theory, correct? Well, my question is this, I think it's also alleged that there was a history of burning on that property, correct? A history of burning and then a history of concealment of that burning, all alleged. So my point is this, if, in fact, this has occurred, then why not just send a notice and be on the safe side? You know there's a history of this happening. It's the adjacent property. Why not just send a letter notifying them of the potential to bring action within six months? Why is that impossible? That's the factual question we wanted to get to in the trial court, and we never got the chance because it was 2619. Either the letter was sent within six months or it wasn't. And the history of burning is not known to, was not alleged to have been known to plaintiff at the time of the filing of the action. Our point is that at least with regards to that six-month notice provision, because we're not trying to light a fire on intended, with regards to the Local Government Tort Immunity Act, we're trying to address this idea that for some reason there is a universal application of this six-month notice provision to any class of claims brought against this district. That this district enjoys one of the shortest statutes of limitation imaginable, merely by virtue of its existence, for all purposes, not just levy purposes. It's not a statute of limitations. It's a statutory notice requirement, correct? That's correct, but it functions here as the equivalent because the claim, as Judge Smith found, the claim cannot proceed because letter not received within six months. But that distinction is significant under the law. It's not because the discovery rule has applied to the statute of limitations. It has applied to the statute of proposed in certain circumstances, but I'm not aware of any case authority that would apply to a statutory notice provision in this context, or at least this specific one. Is there any such authority that supports that argument? There appears to be no authority in either direction. That's really our problem because, as we argued below, either of us would be slapping the other in the face with authority that it applies or it does not apply. And perhaps to everyone's benefit, it looks like this doesn't come up very much. Either the Metro East Sanitation District doesn't commit very many torts, or they are not of the type that land in this basket. And this appears to us to be a unique situation in which something that we believe the language of the statute did not contemplate, a totally separate and independent tort from the carrying on of the activity of the district, running a sanitation district. In this instance, they're doing something different. They're riding a fire. I argued below, and I've argued today, it's the equivalent of one of their trucks driving down the road. The statute, especially at the time that it was written, didn't contemplate trucks driving down the road, concealed fires. And I just want to, before I leave the point entirely, that idea that, why didn't they simply send the letter because there was this history of bargaining? The only thing that, and that was our point below, is we think that there has to be a factual determination, that there's some knowledge that the tortfeasor, as alleged, is the tortfeasor, as alleged. If you can't know who caused your injury, and you don't know that your injury was caused by an external force, your cause of action, by its nature, cannot have occurred. You have not identified your injury. The cases say that would be absurd. And it would, because there is no governmental unit so special as to enjoy limitless liability. Limitless immunity from liability, which is what they're asking for here, that it wouldn't have mattered, according to my public's argument, if they would have brought in a backhoe and covered the whole thing up, and whatever actions they took to conceal for six months, once that time passed, they're off the hook. That can't be what the statute counts it with. That can't be, the legislature could not, and there's some other cases that say this, the legislature could not have intended to create a class of wrongs incapable of redress. That's not what 1-5 does. But again, is there authority on any side? No. The only one we could find was the gas case that specifically addressed this statute and this provision of this statute and said, well, if six months pass from the date of the injury, and in that case it was a flood, MESD opens a flood gate, water comes out, all of the adjacent landowners know that their land has been flooded. There's a common source of the flood. It is MESD that is, in their operative language, operating a system of levees and ditches. That's exactly what they do. Those folks had every reason to know that the cause of their injury was their upstream neighbor causing their flood. In this instance, there was no indication that it would have been the lighting of a fire that shouldn't have been there in the first place, then negligently maintained, left to fester, and then the ignition of a fire on any of these properties. We're going to understand why that wouldn't trigger a belief in your client that this fire may have originated on the neighboring property that has a history of burning over the years when they know themselves that it didn't happen on their property. They would have known if they had started a fire on their own property. Why would that not be sufficient to trigger notice? Important fact questions. We want answers to those questions as well, and we would like to do that in the trial court. Trial court didn't want to hear that. Trial court said either you sent the letter within six months or you didn't. If 111 salvage and its agents, because interestingly, we're not dealing with someone's house. We're dealing with a metal scrapyard, and the ignition of the fire, incidentally, and this was planned, there is no identified cause of the fire. It's not as if the fire marshal came out and said it was those guys and then we sat on it for six months. There was no identified cause of that fire. It wasn't until plaintiff was able to piece together pieces of information that they didn't know and were able to come up with that they said it is possible that they are my tortfeasor. It is possible that they caused this fire. That happens, as alleged, I believe February 16th. That six month would have run within days of that. They didn't know the time. They put it together. They're able to file a lawsuit timely, but they're not able to send that letter timely. And so our point is the statute doesn't mean six months from the date of the occurrence, full stop. Because if it means that, then all of these horrible consequences occur as a result of the application of that statute. There will be unredressed wrongs within that six months if there is no factual inquiry. We, the court, inquired and we allowed an entire part of our argument in the motion to dismiss had to do with equitable tolling and the specific facts that would have created a very narrow window during which that period of time may have been told. The court actually reached that issue on the 2619 motion as well. We're not quite sure how that gets done without finding any facts or without basically saying you've not even alleged the elements of equitable tolling. We don't think that's the case here. So I don't want to bail out of our primary argument, but our secondary argument is we at least have to go back to Madison County for an analysis of that equitable tolling ruling on a 2619 basis because we clearly alleged the elements of equitable tolling. Whether the court wanted to apply it or not is a different issue. Even if the fire is a sudden traumatic event? Yes. It certainly wasn't a continuing series of events like was present in Gass. And I know what my opponent is going to say. That sudden traumatic event, you should have known about that. That's what the cases say. You were on notice that a sudden traumatic event occurred, but that didn't translate to knowing that someone else caused that sudden traumatic event. Certainly not their next-door neighbor. Is that an element? Because the case is Berry v. G.D. Searle. The plaintiff was taking birth control medicine. She had a stroke. Two years passed, and she filed suit, and the Supreme Court said the time for starting is when the stroke occurred, not when you discover who caused the stroke. So the time starts there. There's another case, LaPetre v. Petrie Brothers, where there was an explosion, and they said that explosion is a sudden traumatic event. That's when your time starts running. You don't necessarily know who's responsible, but you know you had something happen. Here you've got a fire that you say is a sudden traumatic event. Why does that not start the time running? Because I believe everybody on the ground, and again, a fact inquiry that we'd love to have happen at the tri-court level to make that determination. What we just don't want is a bright-line rule that if that letter doesn't hit the door within six months, you're out of luck. We don't believe that's the case. We believe exactly that type of factual inquiry is required in order to reach the result. Are we barred as a matter of law? Those sudden traumatic events, at least in those instances, people have reason to know in the explosion that was an employee. He was at work. He had reason to know why he got blown sky high. That was clearly going to be somebody else responsible. With regards to the birth control, at least she was taking birth control pills. She was under medical care. Some external force was acting. In this instance, a big pile of parts caught on fire for no reason. They had no reason to know that it was their next-door neighbor under those conditions, that that could have occurred. That took expert testimony to develop. That took expert analysis. That took more work than simply knowing my car was caught on fire because of a concealed fire started by my neighbor. I don't know if I'm out of time or not. When this flash is solid yellow, you have one minute. So you're under two minutes now. Great. WIOA stands for the proposition that the Welfare Elementary Immunity Act, at least, is not intended to bar meritorious claims prior to their discovery. And my opponent's going to say, it's a harsh result. Sure. It's a harsh result, but statutes can be harsh. And that's the way statutes work if you don't like it, take it up in Springfield. But there's a constitutional component to that argument that says, sorry, we've inadvertently created a class of claims that now have no redress. There is a balance there that exists between that constitutional policy of redressable claims and the law and the statutory goal of eventually putting a limitation on when those claims can be asserted. The balance can't be, hey, we made it past the six-month finish line. That can't be the end result of a statute that in no way mentions that. I'll address it in reply. Thank you. Counsel Frappellini, 25. Thank you.  May it please the Court. Counsel, my name is Brian Fonk. I represent the defendants, including Metro East Sanitary District in this appeal. I want to address an issue raised by Your Honor, why not send a notice? And this is not like filing a lawsuit or complying with a statute of limitations. All you have to do is serve MESD, Metro East Sanitary District, with notice of a potential claim. You never have to act on it. It only takes a few minutes. You don't need legal counsel to do it. You don't need to pay a filing fee. You don't need to come up with your claims. It's a very simple thing to do. And I can tell you from experience that happens all the time. Right now we're litigating a lawsuit from 2019. It was a flooding lawsuit, 200 plaintiffs. Not all these plaintiffs are even serviced by Metro East Sanitary District. But when the flooding occurred, they all served Metro East Sanitary District with a notice under Section 1-5. And they did that to protect potential claims that they may have. And there are, you know, indicators pled in a complaint that demonstrate that the plaintiff should have done that. As you pointed out, Your Honor, you have no history. They knew of a history of burning, allegedly. The burning occurred adjacent to their property. There was a no-burden notice. They plead that in their complaint. So all these things indicate to you that possibly MESD is responsible. Now, of course, we deny that we did that, but that's alleged in the complaint. For purposes of the complaint, it's accepted as true. But what's worse than that, they also plead in their complaint that they knew that MESD or that they had suspicions about MESD prior to the six-month period expiring. So six days, I believe, prior to the expiration of the notice period, six-month notice period, they plead we knew it was MESD. Well, you're not prejudiced when you know before the time period expires that MESD or you believe MESD was responsible. Counsel, to file a complaint, it has to be well-grounded in fact and law. With respect to a notice letter such as this, is there any type of legal standard that would require that the party sending notice have done any type of investigation or any type of similar standard as would apply to a plea? Not to my knowledge, Your Honor. In fact, referring back to that case, the flooding case, some of these plaintiffs are not even serviced by MESD. They're so far away from MESD infrastructure that you couldn't imagine or couldn't believe that MESD was involved. But they still filed notice. And really, there's no prejudice to MESD by filing that notice because they still have to investigate. They still have to determine whether they're going to bring a lawsuit against MESD, whether they have a viable and meritorious claim. So as long as they file that notice and notify MESD their claim is preserved, whether or not they act on it, and the requirements in the statute are not significant. You just have to provide an address and the probable extent of damages. And that's all you need to do. So here, plaintiff, you know, it's worse than just you should have known, you know, based on what they put in their complaint. They plead they did know. Is there anything to be made of the fact that the statute uses the word occurrence rather than approval? Yes. I think what the statute says, the plain language of the statute says, is your time period for the notice provision starts at the time your damages occur. It's within six months after the occurrence of the damage or injury. Typically in statutes of limitation, then they add the language that within such a period of time from the date your damages occur or at the time your cause of action occurs. And that language is contained in other notice provisions that have been repealed by the legislature. For example, 8-102 was in the Tort Immunity Act, and it included language about the accrual. So it had the same language here, but it also had the language that you see in statutes of limitations, which is how the discovery rule is able to be applied to statutes of limitations. And Section 1-5 does not have that language. In rules of statutory construction, we have to assume that the legislature knew what they were doing when they used that language in Section 1-5, but used different language in 8-102 or the Transit Act or other similar statutes of limitations. And this case really begins and ends with the language of Section 1-5. It's clear and plain and unambiguous. There's nothing ambiguous about it whatsoever. It says no claim. It doesn't matter whether it's a fire, a flood, whatever. No claim shall be made for any damage to property. Once again, it doesn't say just floods or, you know, some other specific type of damage. Any damage to property unless notice in writing is filed within six months after the occurrence of the damage. That's it. That's where the case begins and ends, and the circuit court and Judge Smith correctly held that this claim was barred. Plaintiffs are arguing that the discovery rule applies here, and the first thing we need to do to determine whether the discovery rule applies is look at the language of the statute. The Supreme Court has held, and this Court has held in Hawkins, that you look at the language of the statute to determine whether it's compatible with the discovery rule. And as I just mentioned, it's not compatible with the discovery rule. The discovery rule states that their discovery rule tolls the date in which a cause of action approves. Well, this statute has nothing to do with when a cause of action approves, unlike, for example, the statute of limitations. In this case, the applicable statute of limitations, 8-101 of the Tort Immunity Act, does talk about approvals when the cause of action approves. So you think Hawkins is controlling here? I think Hawkins, this Court went a step further than where I'm even going. In that case, you had a situation where this Court was trying to determine whether discovery rule applied to a provision of the UCC. And the Court noted that the UCC, though, has a whole lot of very meticulous rules and guidelines, and they're much more specific than what we have here, isn't it? Well, I'm sure it does, but the focal point of that case was just whether the discovery rule language is in that statute, that particular provision of the UCC. And this Court said that there was no discovery rule language in that provision. That provision had a plural language. This Court went further and said it's got to have that language, discovery rule language, new or should have known. The language that the legislature has put in specific statutes and limitations, such as the hospital and physician malpractice statute limitations, where it's got additional language. And so this Court said, first, you look at the language of the statute to see if it's applicable or see if it's compatible with the discovery rule. And this Court said that accrual language is not compatible. Not even that's compatible. I would say that you could make an argument that if the statute says that your time starts ticking when your cause of action accrues, then you may be able to apply the discovery rule. But it doesn't matter because this statute, 1-5 of the MESD Act, does not include that language. So the first thing, the first problem for plaintiffs arguing with the discovery rule is that the language is not compatible with the discovery rule. The fundamental thing that the discovery rule does, that language is not contained in Section 1-5. You also look at the context here. The plaintiff in the circuit court and here has argued that, well, we didn't know that MESD was responsible. We didn't know that MESD was negligent, which, as I mentioned earlier, that's incorrect. They've pled that they did know. But that's not the standard, and, Aaron, I believe you referenced that earlier. In Nolan, the Supreme Court said, We wish to emphasize that the rule we announce, speaking of the discovery rule, is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendant's negligent conduct. That's not the standard for the discovery rule. That's the standard the plaintiff is asking you to apply, saying, Well, we didn't know that MESD was negligent, so our clock should continue. And in Nolan, the Supreme Court said there would be no cap in time. Basically, the statute of limitations or notice of provision would be extended until you found out that a certain party was negligent. So the interpretation of the discovery rule that the plaintiff is asking this court to apply is incorrect. Then you have this specific situation. As you mentioned, Your Honor, this is a sudden and traumatic event. Just like LaPreechi, this is a fire, an explosion. You know that when a fire lights up on a stack of junk cars that something happened and it was wrongfully caused. It's not supposed to spontaneously combust. At that point in time, you know for purposes of the discovery rule that it's wrongfully caused. And it's your duty then to go and investigate and determine what happened. And here, this is a sudden and traumatic event. And as a sudden and traumatic event, time starts ticking on the date of the event, which would have been August 22, 2023. And the plaintiff did not serve their notice on the Metro East Sanctuary District until a year later. And once again, you know, looking at the specific facts in this case, this is not something that the discovery rule could apply to because the plaintiff knew before the time expired that they suspected MESD of setting fire. From your perspective, do you believe we should rule in your favor because the discovery rule doesn't apply to the language that's used in the statute, or do you believe we should find that the discovery rule doesn't apply because it was a sudden traumatic event? Both. First and foremost, I would say the statute, statutory language, and that's what Judge Smith ruled in her order. The statutory language cannot be, as the Supreme Court said, cannot be incompatible with the discovery rule. And every, another way to look at it is this, that every time the discovery rule has been applied, it's had some kind of language in that statute that allows it to apply, specifically when the cause of action accrues. Put it more simply, if the discovery rule pulls the time, a cause of action, when the cause of action accrues, then the statute that you're referring to has to involve when a cause of action accrues. And that language is missing from the statute, Section 100-5. So you can't toll something that doesn't exist, I guess would be my argument. So my first and foremost would be, yes, the language. But even if you got past that and said, well, somehow we can apply it to this language, then it's the arguments I've referenced, including the sudden and traumatic nature of this event. And for those reasons, unless the court has any additional questions, we ask that the served court's ruling be affirmed. Justice Hannon. Maybe just a moment on a slightly different perspective. It's raised in the briefs tangentially, but there's an argument suggested that this particular notice rule is within the scope of the anticipated actions of MESD. Meaning that the gas case you cited and some other ones are based upon damages anticipated in the function of the MESD, flooding, property damage, improper levy system, et cetera. Is there any force to the argument or merit to the argument that the rule is anticipating those types of situations requiring notice and may not be applicable to these extraordinary circumstances, such as a fire or ground pollution or whatever? Any merit to that? It's brought up in one of the briefs, and it's, as we talked about earlier, as you talked about, I'm sorry, the appellant's attorney talked about earlier, there is no strong case citations either way on this issue. And I didn't see any cases that would interpret that language any different way, but it is brought up in the appellant's brief referentially. Any thoughts on that? Yes, thank you for the question. I think we're once again bound by the language of Section 1-5, and it specifically says any damaged property. It says no claim. So the language doesn't parse out specific claims, and the legislature could have done that if this was related to specific types of claims, including flooding. The plaintiff naturally went to flooding because MESD does a lot of flood control with the levies and other items. But that's not the only things they do. They would do waste management and other stuff like that. The legislature chose to make it as broad as possible. It said no claim for any damage, any property damage. And so that would include, in my opinion, the plaintiff's claims here. They would fall within the statute, and they would be barred. Thank you. Any questions? No, thank you. Thank you. Thank you. Thank you. So there doesn't seem to be much in the way of an ability to explain away this idea that if a sudden and traumatic event occurs, that with regards to the external force that causes that sudden and traumatic event, whether that's the shutdown of a bodily function from a birth control pill or an explosion while you were at work, each of those people has a path to track back to the cause of their harm the day it happens. I believe the explosion guy was in a coma for a period of time after that, and he still went back to the site of the explosion to learn that there was a gas line. And so the fact that it's a sudden and traumatic event, it was a big fire. It was on the news. There was helicopters. It wasn't as if they didn't know their stack of cars caught on fire. But to this day, EPA still thinks it was awful. So the fact that we're here at all being told that we should have known the cause of the fire that no one else seems to know, that we've developed a theory on our own and created an interesting doughnut hole that is six days wide in two statutes that I think we now all can see. One contains a cruel language. The other does not. If the Tort Immunity Act contains a cruel language and would have accommodated our six days on the other side of our statute of limitations, but we're now constrained by a notice provision that doesn't, we have an even more limited class of claims that is now capable of occurring but having no regress. Again, that can't have been the legislature's. There's no way to read those two things in harmony, saying the accrual language exists over there. See, that's what it would look like if it was intended to accommodate you. And it does, in fact, accommodate our cause of action, but it doesn't accommodate the letter. By bonus reading, we should just send letters to every unit of local government anytime anyone gets hurt. That way, we're covered. It doesn't take any time. We just send them all, and they can be inundated by these notice letters that now function as a statute of limitations with no accrual language. We can see that, and I think in our reply brief is where we talk about some of these changes that came out of the 1930s, where it stops being a single run-on sentence. We get a period. We lose some italics, and the Sanitary District Act is, you no longer have to recognize all sanitary districts, but it's talking in that section about the name of the district, and it's talking about what they do, and that's where that notice provision comes from. And as counsel just mentioned, there may be people far flung. The district should have that knowledge of who is hurt and to what extent they are hurt. If the person who was hurt knows that they were, in fact, hurt, that's why that accrual language exists somehow in the statute of limitations that applies to this case but not in the notice provision that functions as a smaller and more punitive statute of limitations within that six months. Should they have known? That's the fact question that Judge Smith didn't let us get to. Counsel, your argument that you'd have to pepper all of these local governmental entities with notice letters to be on the safe side, would there be any other conceivable local governmental entity that could have had a role in this fire beyond this particular defendant? Well, none that we were aware of at the time and none that we're aware of now, but that would require that particular litigant to look to all of its neighbors, to anyone within a certain distance, any responding district. All of those, factually, would have had redress that the latent fire that occurred the weekend before this fire occurred didn't have. And so, factually, that's the argument we want to get to because it would very literally, if there was a fact argument, that if this is not a bright line any time six months passes, you can't bring this claim if you haven't given notice because it will very quickly ferret out who should have done what. There would be someone to blame, the employer. Someone should have known becomes a very important part of that standard, factually. If we should have known within that six-day period of time that MSD was the cause of the injury, the notice provision is going to apply anyway. The discovery rule is not going to hurt anything. We wouldn't have changed a thing. There are rules for a bright line rule because ordinarily, I'm a municipal lawyer, too. I want that bright line rule. I won't be able to say, my liability is capped at six months. I don't even have to look at the facts beyond that six months. It wasn't intended in the statute of limitations. It's not intended in the notice provision. It's a convenient read that produces the right result for the defendants in this case, and that's why they did it at the time, and that's why they're relying on it now. We believe it's a fact inquiry. Any questions? No, thank you. Thank you all. We appreciate your arguments. We appreciate the briefs you filed. We will take them out on the horizon and issue a decision in due course.